## UNITED STATES
## v.
## 15 MILLS BLUE BELL GAMBLING MACHINES et al.
## Civ. No. 918.

United States District Court
M. D. Georgia, Macon Division.
Jan. 20, 1953.
Amended Opinion Feb. 19, 1953.

---

Frank O. Evans, U. S. Atty., and Jack J. Gautier, Asst. U. S. Atty., Macon, Ga., for the United States.

Nall & Sterne, Atlanta, Ga. (Clinton J. Morgan, Atlanta, Ga., of counsel), for defendant.

CONGER, District Judge.

The United States filed a libel of information against the slot machines or gambling devices in the caption described under the provisions of Public Law 906, 81st Congress, 15 U.S.C.A. § 1171 et seq. The libel of information alleged that John Harold Moore, doing business as Ace Novelty Machine Company, of Atlanta, Georgia, being a dealer and having failed to register and file inventories and records with the Attorney General, as required by said Act of Congress, did, on August 17, 1951, ship said slot machines from Atlanta, Georgia, to the Heath Distributing Company, Macon, Georgia, and prayed that they be condemned and forfeited to the United States.

The claimant, John Harold Moore, having an interest in the devices, filed an answer setting up several defenses.

■ The United States filed a motion to strike the answer of the claimant, on the ground that the same set forth no defense, for the reason that slot machines, the property in question, are contraband under the law of the State of Georgia and that, therefore, claimant has no property rights which can be asserted or protected in a court of law, and, further, that said slot machines being contraband under the law of the State of Georgia, the Federal Court will not lend its aid to the protection or preservation of said property or any interest, right or title therein.

The motion of the United States is, upon consideration, overruled and denied.

It is my judgment that the United States cannot take advantage of acts, conduct or situations which are not legally offensive to it, although such acts, conduct and situations may be legally offensive to the State. A slot machine is not contraband under the Federal law. The possession of slot machines is as lawful under the Federal law as the possession of a washing machine, if the machines, or the persons related to or connected therewith, conform to all the requirements of law with respect thereto. Slot machines are not per se offensive to the United States, nor does their possession violate any Federal rule or law, ipso facto. Under Public Law 906 of the 81st Congress, failure of manufacturers and dealers to conform to the provisions of the Act makes slot machines forfeitable to the United States. If the provisions of the Act, and all other Federal rules, laws and regulations, are conformed to, the possession of slot machines under the Federal law is perfectly legal. The presumption is that the owner or possessor of the slot machines in question conformed to all the requirements of the law relating thereto. If the United States could seize and hold slot machines solely because they are contraband under the Georgia law, full and complete compliance with the Federal law would avail nothing. Compliance with the letter of the Federal laws, regulations and requirements, the paying of taxes, registering and filing inventories and records would not make the machines contraband under the Georgia law. Therefore, I repeat that the motion of the United States to strike is denied.

■ The claimant in his answer sets up five defenses. In his first defense he contended that the court had no jurisdiction of the subject-matter and is without legal authority to condemn and forfeit said slot machines for the reason that they were illegally seized. The undisputed evidence discloses that the devices sought to be condemned were located in a storehouse building at 243 Third Street, Macon, Georgia, and that they were in possession and control of one Heath, of the Heath Distributing Company, and that Heath, after being advised, authorized and permitted the seizure of the machines. It also appears that the devices were seized after Heath had conferred with his Attorney and that said Attorney was actually present when the seizure took place. The devices sought to be condemned were actually owned by John Harold Moore, doing business as Ace Novelty Machine Company, but had been assigned to the Heath Distributing Company, Macon, Georgia, to be sold by the latter. That Heath, to whom the devices had been consigned for sale, and the person in full and complete charge of the storage building, as tenant, in which the devices were located, consented to the seizure.

The defense that the court is without jurisdiction because of the alleged illegal seizure of the devices is denied.

■ The second defense is that the statute and law under which the devices are sought to be condemned does not apply to dealers in intrastate commerce. This defense is sustained.

■ The third and fourth defenses set forth and contend that Public Law 906 of the 81st Congress is void because of vagueness and uncertainty, particularly because of the phrases "in such district" and "in the district," not set-

ting up what district the Congress had in mind, as set forth in section 1173. That section requires every manufacturer of and dealer in gambling devices to register with the Attorney General his name, the address of his principal place of business, and the addresses of his places of business "In Such District." That section of the Act further provides that on or before the last day of each month every manufacturer of or dealer in gambling devices shall file with the Attorney General an inventory and record of all sales and deliveries of gambling devices as of the close of the preceding calendar month for the place or places of business "In The District." Do these phrases "in such district" and "in the district" mean a judicial district? If so, what judicial district, or do they mean all judicial districts, or does it mean the District of Columbia? There is nothing in the language itself or in the context that would throw any light upon or give any information with reference to what is meant, what territory is included, or what districts the Congress had in mind. Defenses three and four are sustained, and it is held that Section 1173 is void and unenforcible because it is too vague, uncertain and indefinite. The Act requires the manufacturer and dealer to register with the Attorney General the name, and the address of the principal place of business only "in such district." A district generally pertains to a definite portion or area of a state or city, made for administrative, electoral or other governmental purposes. It is a portion of territory, region or tract well defined, and having set boundaries. A district, therefore, must be located somewhere that is well defined, with definite boundaries. In the fifth line of section 1173 is the phrase "in *such* district," in the tenth line the phrase "in *the* district." In other words, the law requires that the manufacturer of or dealer in gambling devices register with the Attorney General the name and addresses of the places of business "in *such* district," and further requires the filing of inventories and records of all sales and deliveries for the place or places of business "*in the district.*"

The fifth defense is predicated on the theory that the Act under which these proceedings are brought seeks to regulate intrastate commerce, which is beyond the power of Congress to do. This defense is sustained.

It appears from the allegations in the libel of information that the only charge against the devices sought to be condemned and forfeited is that they were shipped from Atlanta, Georgia, to Macon, Georgia, points wholly within the State of Georgia, after the effective date of the Act, by a dealer who had not registered or filed inventories and records as required by the Act. It appears from the libel that the gambling devices were in Georgia on the effective date of the Act; that they have never been in interstate commerce since the effective date of the Act, but were on that date and have at all times since been within the State of Georgia.

Let proper judgment be prepared in accordance with this memoranda, sustaining the claimant.

### Amended Opinion.

On February 15, 1953, the Attorneys for the United States of America filed a petition setting forth and contending that the Court's memoranda opinion filed January 20, 1953, was capable of two possible interpretations, as follows:

"(1) That this section does not apply to dealers engaged in intrastate transactions for the reason that to construe it otherwise would require a holding of unconstitutionality;

"(2) That this section is an unlawful exercise of the implied power to regulate intrastate commerce and does not apply to dealers so engaged."

and request that the Court clarify its holdings so as to enable the United States of America to determine whether an appeal should be made to the Fifth Circuit or direct to the Supreme Court.

It was not the intention of the Court to declare the Act to be unconstitutional or to make use of any language by which that interpretation could be made.

It is the general rule of construction that an interpretation of an act which would make it unconstitutional will not be adopted unless imperatively required by the wording of the act or the context of the act as a whole. It should be kept in mind that the instant suit is one in rem. It is brought against the alleged offending devices and not against the dealer or manufacturer who failed to register and make reports. It should also be kept in mind that it is in no wise contended by the United States that the gambling devices ever traveled in interstate commerce after the effective date of the Act; that they were at all times within the State of Georgia; that they never left its boundaries, nor were they shipped into or out of the State. I am of the opinion that the seizure provisions of the Act cannot be held operative as to such property because it is beyond the power of the Congress to regulate intrastate matters. Thus construed, the Act need not be held unconstitutional.